**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 10, 2018**

# In the Court of Appeals of Georgia

A18A0881. MALIBU BOATS, LLC f/k/a MALIBU BOATS, INC.
  et al. v. BATCHELDER et al.

RAY, Judge.

In this interlocutory appeal in a negligence case, we are asked to determine whether a series of events triggered by water swamping a watercraft may constitute a sufficient physical impact, if the events inflict personal injury to the occupants of the watercraft, so as to allow recovery for emotional damages[1] under Georgia's

---

[1] Malibu Boats, LLC f/k/a Malibu Boats, Inc. and Malibu Boats West, Inc. characterized the appellees' claims as seeking damages for "negligent and intentional infliction of emotional distress," while the appellees state they "have never sought recovery under either of these claims" and instead seek "a jury verdict reflecting their suffering that is properly compensable under Georgia law (physical, mental, and emotional). . . ." The trial court evaluated the appellees' claims as arising from "negligent infliction of emotional distress and intentional infliction of emotional distress," and there is no cross-appeal by the appellees challenging the trial court's finding on that issue. See *Graybill v. Attaway Constr. & Assoc.*, 341 Ga. App. 805, 813 (3) n. 7 (802 SE2d 91) (2017).

impact rule. In denying Malibu Boats, LLC f/k/a Malibu Boats, Inc. and Malibu Boats West, Inc.'s (collectively, "Malibu") motions for partial summary judgment on this issue, the Superior Court of Rabun County found that jury questions remained concerning whether the appellees sustained a physical impact, whether any such impact caused the appellees to suffer physical injuries, and whether the appellees suffered emotional distress as a result of any alleged physical injuries. Because we cannot say, as a matter of law, that the events triggered by water swamping a watercraft due to an allegedly negligent design of the watercraft could not fulfill the physical impact requirement of the impact rule, we affirm the trial court's order denying Malibu's motions for partial summary judgment in part. However, we disagree with the trial court's suggestion that certain plaintiffs may be able to recover damages for emotional distress solely from witnessing a traumatic scene and, therefore, reverse that portion of the trial court's order.

Under Georgia law,

> [s]ummary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

2

(Footnote omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008). So viewed, the record reveals that members of the Batchelder family rented a 2000 Response LX boat, manufactured by Malibu, on July 14, 2014, while vacationing at Lake Burton in Rabun County, Georgia. On July 17, 2014, Darin Batchelder, Dennis Ficarra, and four Batchelder children took the boat out on the lake to wake surf and engage in other recreational activities. The children included Kayla and Zack Batchelder (Darin Batchelder's children), Josh Batchelder (Kayla and Zack's cousin), and seven-year-old Ryan Batchelder (Josh's brother). Ficarra is the childrens' uncle. Ficarra navigated the boat, while Darin Batchelder sat in a port-side seating area. Each of the children was seated in "drop down" seats in the bow of the boat, commonly referred to as the "hot tub" or "playpen" area.

After boating for some time, and while the children argued over whether to return to the dock, Ficarra performed a circular turn which resulted in the boat striking its own wake. At that point, water began to spill over the bow of the boat, where the children were seated. The children reported that the water in the bow reached their shin areas and their knees. The children panicked, and Zack jumped from the boat into the lake to reduce the weight in the bow, while Kayla and Josh scrambled to the rear of the boat; unbeknownst to the other occupants of the boat, Ryan either jumped or was washed from the boat.

In an attempt to level the boat and prevent it from foundering, Ficarra placed the throttle in reverse. Ficarra then stopped the engine and heard everyone yelling that they didn't see Ryan. Darin Batchelder and Ficarra jumped in the water to look for Ryan, and Ficarra found him entangled in the propeller.[2] Ryan died as a result of serious injuries he suffered after being struck by the propeller. In addition, at some point during the ordeal, Zack scraped his stomach as he attempted to re-enter the boat, Kayla suffered a bruise on her shin as she scrambled to the rear of the boat, and Josh began hyperventilating and vomiting shortly thereafter.

As a result of the accident, Ryan's parents, Zack, Kayla, Josh, and Darin Batchelder filed suit against Malibu and others for negligence.[3] Malibu moved for partial summary judgment against Zack, Kayla, and Josh Batchelder ("the minor

_____

[2] Each of the defendants filed a notice of non-party fault against Ficarro, the driver of the boat, pursuant to OCGA § 51-12-33 (d) (i).

[3] Ryan's parents brought claims individually and as the natural guardians of Josh, while Darin Batchelder brought claims individually and as the natural guardian of Zack and Kayla.

The other defendants included One Water Ventures, LLC d/b/a Singleton Marine (the successor to the original purchaser of the boat) and Anchorage Marine, Inc. (the owner and lessee of the boat at the time of the incident). Only Malibu filed the motions for partial summary judgment at issue in this appeal. In summary, the claim of negligence against Malibu derives chiefly from allegations that the watercraft "was both unreasonably dangerous and defective at the time it was designed, fabricated, assembled, manufactured, tested, inspected, marketed and sold because it was unsafe for its intended and reasonably foreseeable uses."

4

plaintiffs"), asserting that the minors were not entitled to damages for negligent infliction of emotional distress because they were unable to satisfy any element of the impact rule. The trial court found that jury questions remained concerning whether elements of the impact rule had been met and denied Malibu's motions. The trial court granted Malibu a certificate of immediate review, and we granted Malibu's application for interlocutory appeal. This appeal followed and, for the reasons explained below, we agree with the trial court that material issues of fact remain concerning whether the impact rule has been satisfied, but disagree as to the scope of injuries which are recoverable by the minor plaintiffs.

1. In its first enumeration of error, Malibu contends that the trial court erred by finding that "the impact of water . . . was sufficient impact under Georgia law to sustain claims for emotional distress damages. . . ." However, what the trial court found was that "[w]hether the impact of water slamming into the children and knocking them from their seats and out of the boat is sufficient 'impact,' is a jury question. . . ." We agree with the trial court that a question of fact remains as to whether the minor plaintiffs sustained a physical impact under the impact rule.

"[T]he current Georgia impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional

distress." *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 586 (I) (533 SE2d 82) (2000). See also *Coon v. The Medical Center*, 300 Ga. 722, 734 (4) n. 8 (797 SE2d 828) (2017) (same). As a result, "[a] party claiming negligent infliction of emotional distress must therefore show a physical impact resulting in physical injury."[4] *Hang v. Wages & Sons Funeral Home*, 262 Ga. App. 177, 179 (585 SE2d 118) (2003). See also *Lee*, supra at 585 (I) (citing *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663, 665-666 (2) (A), (B) (386 SE2d 146) (1989) ("*Littleton II*")). A plaintiff's failure to meet any one of the three requirements of the impact rule will preclude recovery. See *Lee*, supra at 586 (I).

The parties have not cited, and we have not found, any Georgia authority addressing a relationship between contact with water and the "physical impact" element of the impact rule. Because a "physical impact" may be sustained in virtually innumerable ways, the facts of this case fall within a broad spectrum bounded on the

---

[4] There is no allegation that Malibu engaged in conduct that was "malicious, wilful, or wanton" *and* that the conduct was directed specifically at the minor plaintiffs, or that the minor plaintiffs suffered a pecuniary loss, either of which could excuse the need for a physical impact under Georgia law. See, e.g., *Ryckeley v. Callaway*, 261 Ga. 828, 829-830 (412 SE2d 826) (1992) (wilful act must be directed at plaintiff); *Clarke v. Freeman*, 302 Ga. App. 831, 836 (1) (692 SE2d 80) (2010) (same). See also *Philips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 77-78 (699 SE2d 58) (2010) (pecuniary loss rule). Accordingly, we need not address those exceptions to the physical impact requirement of the impact rule here.

one side by cases in which evidence of a physical impact was clear,[5] and on the other by those cases in which it was apparent no physical impact occurred.[6] Relative to this case, the potentially harmful effects of water generally, and wakes produced by watercraft in particular, have been recognized and regulated in other contexts of Georgia law. See, e.g., OCGA § 52-7-2 (public policy to "promote safety for persons and property in and connected with the use, operation, and equipment of vessels"), OCGA § 52-7-18 (d) ("Powered vessels approaching nonpowered vessels shall reduce their speed so that their wake shall not endanger the life or property of those occupying the nonpowered vessel.").[7] As a result, we cannot say at this stage of the proceedings, as a matter of law, that a watercraft's contact with water, including a collision with a wall of water such as a wake,[8] which results in swamping due to

[5] See, e.g., *Wardlaw v. Ivey*, 297 Ga. App. 240, 243 (2) (676 SE2d 858) (2009) (plaintiff sustained minor injuries when tree cut by defendant fell on plaintiff's truck); *Wilson v. Allen*, 272 Ga. App. 172, 173-174 (1) (612 SE2d 39) (2005) (plaintiff sustained bruised hand and broken fingernail when school bus she was driving struck by defendant's vehicle).

[6] See, e.g., *Coon*, supra at 734-735 (4); *Hang*, supra at 179-181.

[7] See generally *Brockington v. Certified Electric, Inc.*, 903 F2d 1523, 1525-1526, 1529 (B) (1) (11th Cir. 1990) (injury caused when a smaller boat "hit a large wake" left by a larger vessel); *Brown v. Williams*, 191 Ga. App. 147, 148 (381 SE2d 308) (1989) (victim injured when boat in which he was a passenger "struck a large wake").

[8] Although used throughout the Georgia Boat Safety Act, see OCGA § 52-7-1 et seq., "wake" is not a defined term. Common usage defines a "wake" as "the track

7

another's negligence, does not satisfy the first element of the impact rule.[9] Compare *Canberg v. City of Toccoa*, 255 Ga. App. 890, 891 (1) (567 SE2d 21) (2002) (smoke from plaintiffs' burning house, resulting in stinging, watery eyes, sufficient allegation of physical impact). See also *Chambley v. Apple Restaurants, Inc.*, 233 Ga. App. 498, 500 (1) (504 SE2d 551) (1998) (jury issue to decide "whether eating part of a salad containing a concealed, unwrapped condom is sufficient physical contact under the impact rule to permit recovery for damages").[10] Accordingly, we agree with the trial court that a genuine issue of material fact remains as to whether the minor plaintiffs sustained a physical impact.

left by a moving body (as a ship) in a fluid (as water)." Webster's Ninth New Collegiate Dictionary, p. 1325 (1991). Compare OCGA § 52-7-3 (13) ("'No wake' means that the wake or wash created by the movement of the vessel through the water is minimal."); *State v. Botsch*, 541 NE2d 489, 491 (Ohio Ct. App. 1989) ("wake" administratively defined as "a track left by a watercraft in the water causing waves that may cause discomfort, injury, or damage to persons, watercraft, or property.") (citation omitted).

[9] Rather than a bucolic scene of water lapping gently against the side of a boat and producing minimal splashing, evidence from the record demonstrates water swamping the bow of the boat and rising to a depth of one to two feet.

[10] Malibu's criticism of *Chambley*, supra, is misplaced. While *Chambley* is certainly factually unique, it nevertheless stands for the unremarkable proposition that there are occasions in which a jury must decide if an element of the impact rule has been satisfied. See also *Grizzle*, supra at 305 (1) (a) (affidavits "created an issue of fact whether the physical impact [the plaintiff] sustained during the collision caused him physical injury").

2. Next, Malibu asserts that the trial court erred in finding that the minor plaintiffs' injuries "created a jury question as to whether the water impact caused the physical injur[ies]. . . ." The trial court determined that the minor plaintiffs' injuries "are evidence of injury sufficient to satisfy the second element of the impact rule and create a jury question as to whether the impact caused the physical injury." Again, we agree with the trial court on this issue.

To satisfy the second element of the impact rule, the physical impact sustained by the plaintiff must result in a physical injury. See, e.g., *Hang*, supra at 179. In this case, undisputed evidence revealed that each of the minor plaintiffs suffered some form of injury: Zack suffered a scrape on his stomach and Kayla sustained a bruise on her shin, while Josh began "vomiting and hyperventilating" following the collision with the water. Despite Malibu's arguments to the contrary, it is not dispositive that the minors did not seek treatment for these injuries or that these injuries were slight. Compare *Wardlaw*, supra at 241 (plaintiff suffered "muscle soreness and minor scratches"); *Wilson*, supra at 173-174 (1) (plaintiff sustained bruised hand and broke a fingernail); *Canberg*, supra at 891 (plaintiffs' eyes watered and burned due to smoke); *Chambley*, supra at 500 (1) (plaintiff vomited and became "nauseated"). Furthermore, it is of no consequence that the water itself did not inflict injury upon the minor plaintiffs. See *Floyd v. Travelers Prop. Cas. Corp. of America*, Case No.

1:05-CV-82 (WLS), 2006 U.S. Dist. LEXIS 42043, at *10 (I) (D) (M.D. Ga. 2006) ("The essential question, however, is one of simple factual causation, i.e., whether Defendant['s] alleged negligent conduct caused or set into motion an event or series of events which resulted in physical injury to Plaintiff."); *Southern R. Co. v. Jackson*, 146 Ga. 243 (91 SE 28) (1916) (woman, who leapt from train track to flee an engine approaching in a "grossly negligent manner," and who suffered "shock" and pain and suffering resulting from her fall, has "right of action").[11] Accordingly, we conclude that a genuine issue of material fact remains as to whether these injuries were the result of a physical impact and are, therefore, sufficient to satisfy the second element of the impact rule. See *Grizzle*, supra at 304-305 (1) (a) (where train engineer "suffered worsening shoulder and back pain," as well as psychological injuries, following train's collision with automobile on train track, testimony "created an issue of fact whether the physical impact he sustained during the collision caused him physical injury"). Therefore, the trial court did not err in denying Malibu's motion for partial summary judgment on this issue.

---

[11] Similarly, Malibu's argument that the minor plaintiffs essentially inflicted injuries upon themselves - during their efforts to escape the swamping of the bow of the boat - is not persuasive. See generally *Floyd*, supra at *10 (I) (D); *Jackson*, supra at 243.

10

3. Finally, Malibu argues that the trial court incorrectly applied the third element of the impact rule when it found that the minor plaintiffs' "alleged injuries and 'overall traumatic scene' were sufficient to create a jury question regarding emotional distress claims." After citing *Jordan v. Atlanta Affordable Housing Fund*, 230 Ga. App. 734 (498 SE2d 104) (1998), the trial court found that "[a] jury could determine that the [minor plaintiffs] suffered emotional injuries flowing from the physical injuries . . . and overall traumatic scene." In part, we agree.

In this case, the minor plaintiffs sought damages for "severe, debilitating, and likely permanent emotional trauma, mental anguish, and suffering." Recovery for emotional distress following a physical injury caused by another's negligence "is limited to compensation for . . . any mental suffering or emotional distress [the plaintiff] incurred as a consequence of [the plaintiff's] *physical injuries*." (Emphasis supplied.) *OB-GYN Assoc. of Albany v. Littleton*, 261 Ga. 664 (410 SE2d 121) (1991) ("*Littleton IV*"), abrogated by *Lee*, supra at 588 (III) . See also *McCunney v. Clary*, 259 Ga. App. 260, 262-263 (1) (576 SE2d 635) (2003). As a result, to the extent the minor plaintiffs suffered emotional distress resulting from the alleged physical injuries described in Division 2, supra, and they have otherwise satisfied the

remaining elements of the impact rule, the minor plaintiffs may seek damages for such emotional distress. See id.[12]

However, we depart from the trial court's apparent conclusion that the minor plaintiffs may be able to recover emotional damages solely for being exposed to the "overall traumatic scene" following Ryan's tragic death. This holding is erroneous.[13] "[W]here [mental suffering] is distinct and separate from the physical injury, it cannot be considered." *Lee*, supra at 585 (I). Accordingly, only those damages related to the sustained physical injury itself may be recoverable. Id.

Despite multiple opportunities to create exceptions to the impact rule due to its sometimes harsh results, the Supreme Court of Georgia has recognized only

> a single, carefully circumscribed exception to the physical impact rule, authorizing recovery of damages by a parent where the parent and her child both suffered a physical impact that caused them both physical

---

[12] To the extent the minor plaintiffs seek emotional damages resulting from *both* their slight physical injuries and from witnessing the aftermath of Ryan's death, *Oliver v. McDade,* 297 Ga. 66, 68 (772 SE2d 701) (2015), suggests that such matters present questions for the jury where it is not possible to determine whether any portion of the emotional distress arose solely from witnessing injuries to others.

[13] To that end, jury instructions by the trial court should be tailored to limit prejudicial evidence of, as well as the jury's consideration of, the "overall traumatic scene." See generally *Bennett v. Moore*, 312 Ga. App. 445, 459-460 (4) (a) (718 SE2d 311) (2011) ("graphic and emotional evidence" of accident scene, related to a claim for damages to which the plaintiff was not legally entitled, should be excluded).

injuries, even if the parent's emotional distress arose not only from her physical injury but also from watching her child suffer and die.

*Coon*, supra at 734 (4) (citing *Lee*, supra at 588 (III)).[14] It is clear that the minor plaintiffs' claims are not included within the narrow *Lee* exception, and we are not authorized to expand the exception in this case. See *Lee*, supra at 588 (III); *Shores v. Modern Transp. Svcs.*, 262 Ga. App. 293, 296 (2) (585 SE2d 664) (2003); *McCunney*, supra at 262-263 (1).[15] As a result, the trial court's conclusion that "[a] jury could

---

[14] Conversely, a parent cannot recover for emotional distress from the death of a child during delivery, see *Littleton IV*, 261 Ga. at 664, or from witnessing the non-fatal injury of his spouse and his children involved in the same event. See *McCunney v. Clary*, 259 Ga. App. 260, 261-263 (1) (576 SE2d 635) (2003). Similarly, a *relative* cannot recover for emotional distress from witnessing the non-fatal injury of a relative involved in the same event. See *Bennett*, 312 Ga. App. at 458 (3). Inasmuch as Malibu's motions for partial summary judgment did not include Ryan's parents or his uncle, Darin Batchelder, we do not consider whether these relatives have satisfied the impact rule for their claims of emotional damages.

[15] Because decisions of the Supreme Court of Georgia are binding upon this Court, we need not consider the trial court's statements concerning abolition of the impact rule. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Coon*, supra at 734 (4) ("Georgia follows the physical impact rule for claims of negligent infliction of emotional distress, which this Court first adopted in an 1892 decision.") (citation omitted); *Thorpe v. Sterling Equip. Co.*, 315 Ga. App. 909, 911 (1) (729 SE2d 52) (2012) ("[D]icta is a statement in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.") (punctuation omitted).

determine that the [minor plaintiffs] suffered emotional injuries flowing from the . . . overall traumatic scene" is error, and that holding is reversed.

In sum, the trial court correctly found that issues of fact remain concerning whether the minor plaintiffs sustained a physical impact, whether any such impact caused the minor plaintiffs to suffer physical injuries, and whether the minor plaintiffs suffered emotional distress as a result of any of their own alleged physical injuries. However, the trial court erred by suggesting that the minor plaintiffs may be able to recover damages for emotional distress solely "flowing from the . . . overall traumatic scene." Such damages are currently precluded as a matter of well-settled Georgia law. See *Coon*, supra at 734-735 (4); *Lee*, supra at 588 (III); *Littleton IV*, supra at 664. Accordingly, we affirm the trial court's order denying Malibu's motion for partial summary judgment in part and, because the trial court incorrectly concluded that damages for emotional distress that is "distinct and separate from the physical injury" may be recoverable, see *Lee*, supra at 585 (I), reverse that portion of the trial court's order.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Rickman, J., concur.*